Eastman v. Mayor, etc., of Nashville.

13L 717
1pi 325
4pi 547

C. H. EASTMAN, Clerk, v. THE MAYOR AND CITY COUNCIL OF NASHVILLE.

CORPORATIONS, MUNICIPAL. *State tax collected by.* The tax upon cases tried in municipal courts is to be paid by the parties convicted, and is not a tax imposed upon the city or in the exercise of one of its agencies or powers, nor is it costs in cases tried before these courts. A party convicted in these courts cannot be imprisoned to secure the payment of this tax. The tax is to be paid by the party found guilty.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. FRANK T. REID, J.

LYTTON TAYLOR for Eastman.

J. C. BRADFORD for Nashville.

WILSON, Sp. J., delivered the opinion of the court.

This was an application of relator, as clerk of the county court of Davidson county, for the writ of *mandamus* to compel the officials of the corporation of Nashville to pay to him revenue alleged to be due the State, arising from the privilege tax imposed by the revenue act of March 3, 1883, on cases submitted or tried before the municipal or police court of the city.

Numerous objections were taken in the circuit court, as to the sufficiency of the petition or as to the right of relator to proceed by *mandamus*, and the

proceedings were dismissed there, as to Ewing, judge of the city court, and Bell, recorder of the city. We are relieved from an investigation of these objections by the statement of the city attorney made here that they are not urged or relied on, as the city desires to have the questions raised settled upon their merits.

The old corporation of Nashville expired under the act of March 21, 1883, on the second Thursday in October, 1883, at eight o'clock, A. M., and the present municipal government, under the same name, came into existence upon its legal demise, subject to all its liabilities, and invested with the title, right to all its property, uncollected taxes, dues, claims, judgments, decrees and choses in action: Act of March 5, 1883, section 2; act of March 21, 1883, sections 58 and 59. Under the extinct city government, the municipal or police court was called the recorder's court, under the present this court is designated, in the creating act, the "city court," but under both, the recorder's court under the former, and the "city court" under the latter, are essentially the same, and their powers and jurisdiction were given to secure the same end.

The fourth section of the revenue law, passed March 3, 1883, in the privileges therein enumerated and taxed, imposes a privilege tax of $1 on "each case before a mayor or recorder's court, or before any police court having jurisdiction of offenses in any taxing district in the State," and provides that the officer collecting the tax on litigation, and "the officer

holding the police court in the towns and cities in the taxing districts of this State, shall report the, amount collected by them every thirty days and pay the same over to the clerk of the county court, taking duplicate receipts, one of which shall, without delay, be forwarded to the comptroller."

This act was in force from its passage, and it appears that, from its passage until the extinction of the old city government, many cases were tried before its police court. In some of the cases convicted, defendants paid in money the fines and costs, and also the State tax; in others, in default of payment, they were sentenced to the city work-house to work out this fine and costs. It also appears that quite a number of cases were tried before the "city court" of the present existing city government, *after* the extinction of the old corporation, *and before* the petition for *mandamus* was filed in this cause. And, as in the case of the old, some of the parties convicted in the "city court" paid, in cash, their fines and costs, and also the State tax. Other defendants thus convicted, in default of payment, were sentenced to the city work-house.

In the progress of the trial below, the city admitted a liability to the relator in the sum of $754, the amount, as it claimed, of State tax collected in cash from defendants tried before its "city court," and before the recorder's court of the old municipality, and not theretofore paid over, and stated its readiness and willingness to pay the same. The court directed it to pay in to court such sum as it admitted to be

due, and that the judgment thus made should be a discharge of its liability to this extent.

The trial judge held that the city was liable to the relator for the State tax in all cases tried before its city court or before the recorder's court, where tax had been paid in money, and in all cases where defendants had been sentenced to the work-house, and confined therein and worked for a sufficient time to pay the fines, costs, and also the State tax, upon the allowance or credits for such costs specified by law.

Upon the admission of relator, that he could only prove the number of cases tried, and from this number the cases in which the taxes had been actually paid, and those in which the defendants had been sentenced to the work-house, the trial judge, on trial rendered judgment against the city for $754, directed the same to be paid within a given time, and dismissed the petition at the cost of the relator, who has appealed to this court.

The contention of relator is, first, that the State is entitled to receive from the city $1.00 in each and every case tried before its municipal court; in other words, that this tax is a tax imposed upon the city or upon the exercise of one of its municipal franchises or functions; and, secondly, if mistaken in this view, that the State has the legal right to demand the $1 in every case where it is actually paid, and in every case where defendants are convicted and sentenced to the work-house.

His claim, with regard to this precise point, if we understand the argument of the learned counsel, is

Eastman v. Mayor, etc., of Nashville.

that if a party tried before the city court is con-
victed and sentenced to the work-house to work out
the fine and the costs, his work must be first applied
to the payment of the State tax; and as the city,
in the view of the law, gets the benefit of his
labor, it must pay the tax, although the party be
discharged before he has been confined or worked a
time sufficient, under the provisions of law, to pay
the fine and cost, and the State tax.

This contention rests upon the idea that this tax
is a part of the costs in this class of cases, or that
the defendant municipality has the power to imprison
parties bringing themselves within the scope or pur-
view of its application, and thus compel them to its
payment by enforced labor done for its benefit.

It may be conceded that the Legislature has the
power to impose a privilege tax on suits or litigation
tried in city or police courts for a violation of city
ordinances, and to direct its payment by the city.
But the presumption is against the evidence of such
tax, because cities or municipalities under our form of
government, are in one sense political agencies of the
State; and although their property or franchises are
not exempt from taxation in their charters, or in the
organic law of the sovereignty creating them, there is
an implied exemption, and in order to subject them
to taxation, the legislative intent to do so must be
clear and certain:  *Mayor and Aldermen of Nashville*
v. *Bank of Tennessee*, 1 Swan, 269; Desty on Tax.,
vol. 1, page 301; Cooley on Tax., page 55, note 1
and authorities cited.

46—VOL. 13.

Applying this rule to the legislation creating the corporation of Nashville, and to the revenue law imposing the tax in controversy, it is clear, we think, that it was the intention of the Legislature that the tax was to be paid by the parties convicted in the municipal courts, and that it was not a tax imposed upon the city or the exercise of one of its agencies or powers. Nor is it costs in cases tried before the municipal courts: *Elliston* v. *Winstead,* 10 Lea, 473, and authorities there cited. And therefore, under the provisions of the law creating its present municipal government, it ·has no power to imprison a party, convicted in its police court, to secure the payment of this tax, but only to secure the fine and costs: Sections 21, 22, 27 and 53, Act of March 21, 1883.

This disposes of the points raised by counsel for relator. The defendant insists that its court is known as the "city court" in the act incorporating the present municipal government, and that it is not a mayor or recorder's court, nor a police court having jurisdiction of offenses in any taxing district in the State, and therefore, that cases tried before it are not within the letter or meaning of the section of the revenue law imposing a privilege tax of $1 on each case tried before said courts.

This is sticking in the bark. Revenue laws should not be liberally construed or expanded so as to make them embrace subjects or objects not intended, but,. unless the language used in them prevent, so as to give effect to the obvious intent of the Legislature: Desty on Tax., Vol. 1, p. 102; Cooley on Tax., 198–199.

And we think, although the particular portion of the act of March 30, 1883, imposing this privilege tax and providing for its collection, is loosely and inartificially worded, that it was the obvious intention of the Legislature to impose a tax of $1, to be paid by the defendant found guilty on each case tried before mayor or recorder's courts or the police courts of cities, towns and taxing districts. As we have stated, the municipal court of the defendant, although called the "city court," is essentially the same in its powers and jurisdiction as those specifically named in the act.

The result reached by the court below in this case was correct, and his judgment will be affirmed, except, that the costs of the court below will be taxed to the defendant. The costs of the appeal will be paid by the relator.