IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 13, 2014 Session

## CITY OF MEMPHIS v. SHELBY COUNTY, TENNESSEE

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-11-1817-2      Arnold B. Goldin, Chancellor**

---

**No. W2014-00890-COA-R3-CV - Filed February 20, 2015**

---

The ultimate issue in this lawsuit is how much of the electric and gas tax equivalent payments made by MLGW to the City of Memphis must be shared with Shelby County. The City claimed that it overpaid Shelby County in electric tax equivalents in recent years, while Shelby County claimed that it was underpaid in gas tax equivalents. The trial court found that the City paid the correct amount of electric tax equivalent payments for the years in question and rejected the City's claim for damages for alleged overpayment. The trial court found that Shelby County was not entitled to a share of the gas tax equivalent payments for the years in dispute and rejected its claim for alleged underpayment. Accordingly, the trial court denied both parties' claims for monetary damages. The trial court resolved the parties' requests for declaratory and injunctive relief by declaring the manner and method of payment of the tax equivalents in the future. Both parties raise issues on appeal. For the following reasons, we affirm and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ROGER A. PAGE, SP. J., joined.

Allan Jerome Wade and Brandy S. Parrish, Memphis, Tennessee, for the appellant, City of Memphis.

Kirk A. Caraway, John R. Hensley, II, Marcy Ingram, and Virginia P. Bozeman, Assistant Shelby County Attorney, Memphis, Tennessee, for the appellee, Shelby County, Tennessee.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

The City of Memphis is a municipal corporation that exists pursuant to a home rule charter. Since at least 1935, the City of Memphis has been authorized to operate and maintain an electric system and a gas system within the corporate limits of the City of Memphis and elsewhere in Shelby County. The City's charter was amended by private act in 1939 to establish the Memphis Light, Gas and Water Division ("MLGW") as a division of the City to control and manage the manufacture, production, distribution, and sale of electricity, natural gas, and water. Tenn. Priv. Acts 1939, c.381, § 1, pp.1072-73. MLGW now operates a public utility that provides gas, electric, and water services within the boundaries of Shelby County. MLGW is subject to the fiscal control of the Memphis City Council.

Tennessee Code Annotated section 7-34-116(a) provides that, "[s]o long as a municipality owns any public works, the property and revenue of such public works shall be exempt from all state, county, and municipal taxation." Accordingly, the Memphis City Charter requires MLGW to make payments in lieu of taxes, also known as "PILOTs" or "tax equivalents," to the City's general fund from the revenue MLGW receives from operating the electric and gas divisions. Specifically, the Charter requires MLGW to annually pay "a sum equal in amount to what would be the City taxes on the properties of the gas [and electric] division[s] within the City limits of the City of Memphis if said properties were privately owned."[1] This provision of the City Charter was adopted by private act of the General Assembly in 1939. Tenn. Priv. Acts 1939, c.381, § 22, pp.1091-92. For decades, MLGW paid tax equivalents to the City in accordance with the City Charter and various resolutions of the Memphis City Council.

In 1971, the Memphis City Council adopted a resolution providing that the tax equivalents from MLGW would be "shared" with Shelby County. According to the resolution, the Memphis City Council recognized the "inequity" in MLGW making tax equivalent payments to the City but not to Shelby County, even though MLGW maintained substantial utility property in the county and would pay property taxes to both the City and the County if it were a privately-owned utility. The City and County subsequently entered into a contract with respect to the Memphis and Shelby County Hospital Authority that

---

[1]Section 693 of the City Charter, by its terms, applies only to the gas division of MLGW, and Section 691, by its terms, applies to the electric division. However, an amendment to the city charter provided that the distribution of revenue for all divisions was to be made after its adoption in the same manner as provided for the gas division. As a result, section 693 now applies to the electric division as well.

provided, among other things, that the City would "continue sharing its annual in lieu of tax payments received by the City from [MLGW] with the County." Thus, since the 1970s, Shelby County has received a portion of the tax equivalents paid annually by MLGW.

The Tennessee General Assembly adopted (effective July 1, 1987) the Municipal Electric System Tax Equivalent Law of 1987, Tenn. Code Ann. § 7-52-301, *et seq.*, (sometimes hereinafter, "the Electric Law"), and the Municipal Gas System Tax Equivalent Law of 1987, Tenn. Code Ann. § 7-39-401, *et seq.* (sometimes hereinafter, "the Gas Law"). By separate resolutions, adopted in 1987 and 1988, the Memphis City Council required MLGW to compute the tax equivalent payments from its electric division using the formula in the Electric Law for calculating the maximum permissible in lieu of tax payment by a municipal electric utility. Likewise, the Memphis City Council required MLGW to compute the tax equivalent payments to be paid by its gas division using the formula in the Gas Law for calculating the maximum permissible in lieu of tax payment by a municipal gas utility. Accordingly, beginning with fiscal year 2000, MLGW computed the tax equivalent payments according to the formulas set forth in the Electric Law and the Gas Law.

In 2008, the Shelby County Finance Director sent an email to the City Finance Director claiming that the tax equivalent payments made to Shelby County in recent years were incorrectly calculated.[2] He contended that the City owed the County an additional $788,215. Weeks later, the City tendered a check to the County for that amount. However, additional disputes ensued between the City and the County regarding the formula to be used when distributing Shelby County its share of the electric and gas tax equivalents paid by MLGW for fiscal years 2006 through 2009.

On November 4, 2011, the City of Memphis filed a complaint for declaratory judgment in the Chancery Court of Shelby County, naming Shelby County as a defendant. The City claimed that it had overpaid Shelby County's share of the tax equivalents "in excess of that required by the [Electric] Law" by mutual mistake of the parties. The City claimed that its City Charter allowed the City to exclude certain sums from the statutory formula for calculating the share of the tax equivalent payment attributable to Shelby County, although it had not done so.[3] Aside from monetary damages, the City also sought a "declaration of the authority of the governing body of the City to allocate MLGW PILOT payments to the

[2] We emphasize that neither party contested the accuracy of MLGW's calculation of the tax equivalent payments. The dispute between the City and the County centered on how much of the total tax equivalent payments paid by MLGW to the City must be distributed, or allocated, to Shelby County.

[3] The City originally sought to recover over $87 million in "overpaid" electric and gas tax equivalent payments for fiscal years 1981 to 2009. By the time of trial, however, the only years at issue were fiscal years 2006 through 2009.

County under the Electric Equivalency Law and under the Gas Equivalency Law," and it sought a declaration that the City was entitled to exclude certain sums from the statutory formula for determining the share to be distributed to Shelby County.

Shelby County filed an answer to the complaint in addition to a counterclaim and "cross-complaint" for damages, declaratory and injunctive relief. The County named MLGW as a "cross-defendant." Shelby County disputed the City's allegation that the County was overpaid with respect to electric tax equivalents; the County claimed that the City collected tax equivalents for MLGW's electric services and distributed Shelby County its share of those payments in accordance with the Electric Law during the relevant time period. However, Shelby County alleged that the City was wrongfully withholding the County's share of other tax equivalents paid to the City by MLGW. Specifically, Shelby County asserted that the City impermissibly collected tax equivalents for MLGW's *gas* services in recent years by using the Shelby County tax rate in its calculation of the payment and retaining the entire tax equivalent payment rather than distributing a share to Shelby County. The County claimed that "[t]he City is not authorized to use Shelby County's tax rate to calculate a tax equivalency payment for gas services and retain any or all of such payment." In addition to monetary damages,[4] Shelby County asked the court to enter a declaratory judgment that "MLGW's tax equivalent payments are subject to the provisions of the Electric Law and Gas Law," that the City was unlawfully withholding tax equivalents belonging to Shelby County, and that state law requires MLGW to pay the tax equivalent payments for electric and gas services directly to Shelby County (rather than paying Shelby County's share to the City for distribution by the City). The County asked the court to impose a constructive trust on the payments improperly held by the City and to order the City to immediately pay the withheld funds to Shelby County. In addition, Shelby County sought a permanent injunction directing the City of Memphis to continue paying Shelby County a specified share of the *total* tax equivalent payment for MLGW's electric services (without first deducting the sums claimed by the City) "for so long as the City of Memphis collects such payments from MLGW in accordance with the [Electric Law]." Shelby County also sought a permanent injunction directing the City of Memphis to pay Shelby County the entire portion of the tax equivalent payments calculated using Shelby County's tax rate for MLGW's gas services, "for so long as the City collects such payments from MLGW in accordance with the [Gas Law]." Finally, it sought a permanent injunction directing MLGW to make payments directly to Shelby County for its portion of the tax equivalent payments.

---

[4]The County sought to recover over $60 million from the City for the amounts it collected in MLGW tax equivalency payments for gas services using Shelby County's tax rate during fiscal years 2000 through 2011. Like the City's claims, the County's claims were also limited to fiscal years 2006 to 2009 by the time of trial.

The City and MLGW filed separate motions to dismiss Shelby County's cross-complaint against MLGW, asserting that the cross-complaint was both procedurally and substantively improper. Shelby County then filed a motion to add MLGW as a party. Following a hearing, the trial court denied the County's motion to add MLGW as a party and granted the motions filed by the City and MLGW to dismiss and/or strike the cross-complaint filed by the County against MLGW. The County filed an amended counterclaim deleting references to MLGW as a party.

The trial court entered a consent order reflecting the parties' agreement that both parties would be precluded from recovering any damages that were allegedly incurred before November 4, 2005 (six years before the complaint was filed on November 4, 2011). A subsequent consent order reflected the parties' agreement to dismiss each party's claims for monetary damages concerning electric and gas PILOTs for fiscal years 2010 and 2011. Accordingly, the only remaining claims for monetary relief were the City's claim that it overpaid the County when distributing the County a share of the *electric* tax equivalents for fiscal years 2006 through 2009, and the County's claim that the City wrongfully failed to pay it any portion of the *gas* tax equivalents for fiscal years 2006 through 2009. The claims for declaratory and injunctive relief also remained pending.

The City and the County filed motions for summary judgment and partial summary judgment with respect to numerous issues. Thereafter, the parties entered a document entitled "Joint Stipulations," which contained fifty-nine paragraphs and several charts containing facts and mathematical calculations that were undisputed. On January 22, 2014, the "trial" of this matter was held in chancery court. However, no additional proof was entered beyond the stipulations of the parties. According to the trial court's order, "[t]he trial itself involved no formal proof, but rather, consisted largely of legal argument and explanatory exposition, in addition to the parties' stipulations." The parties also stipulated to the "authenticity and admissibility of the materials attached to their respective Motions for Summary Judgment, the responses thereto, their Statement of Undisputed Facts and responses thereto and Exhibits attached to the City's Complaint and Shelby County's Counter-Claim." However, the trial court's order did not analyze the issues in the context of the motions for summary judgment and partial summary judgment filed by the parties. Instead, the court addressed the parties' claims for damages and declaratory and injunctive relief with findings of fact and conclusions of law from the January 2014 "trial hearing."

In its findings of fact and conclusions of law, the trial court summarized this case as follows:

> At issue in this case is the proper allocation of Memphis Light, Gas &
> Water ("MLGW["]) gas and electric payments in lieu of taxes ("PILOTs")

between the City of Memphis ("the City") and Shelby County ("the County"). Although the specific disagreements between the parties are both varied and complex, in general, the dispute is a simple one: the parties contend that PILOTs have not been properly shared in the past and they differ in opinion as to the manner in which PILOTs are to be shared going forward. In addition to each asking for monetary relief, the parties have requested that the Court issue a declaration as to their respective rights and obligations. (Footnote omitted.)

The trial court summarized the issues that are relevant for purposes of this appeal[5] as: "[w]hether the City is entitled to reimbursement for alleged overpayment of electric PILOTs for fiscal years 2006 through 2009," "[w]hether the County is entitled to compensation for gas PILOTs alleged to have been wrongfully withheld for fiscal years 2006 through 2009," and "[t]he rights and obligations of the parties going forward." For reasons that will be discussed in greater detail below, the trial court denied the City's claim for alleged overpayments of electric PILOTs because the trial court concluded that "the City paid exactly what was required" under the Electric Law. The court rejected the City's argument that it was authorized to exclude certain sums from the statutory formula for the tax equivalents before distributing Shelby County its share. The trial court denied the County's counterclaim for recovery of unpaid gas PILOTs upon concluding that the Gas Law did not require the City to distribute a share of the gas PILOTs to Shelby County during the years at issue. Moving then to the requests for declaratory relief, the trial court ruled that a 2012 amendment to the Gas Law requires the City to share gas PILOTs with the County going forward. As for the manner of payment, the court concluded that the Electric Law and the Gas Law require the City "to determine by resolution the amount of tax equivalent payments due to each taxing jurisdiction, whereas MLGW is the entity actually directed to make such payments to the taxing jurisdictions." In sum, the trial court found that neither the City nor the County was entitled to monetary compensation with regard to the PILOTs for fiscal years 2006 to 2009. The trial court declared that the PILOTs would "[h]enceforth" be calculated in the manner set forth in the trial court's order, and the PILOTs would be paid directly to Shelby County by MLGW in accordance with the Electric Law and the Gas Law. The City of Memphis timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, the City of Memphis presents the following issues, which we have slightly restated, for review:

---

[5]Another issue resolved by the trial court was not raised on appeal.

1. Whether the trial court erred in its interpretation of the Municipal Electric System Tax Equivalent Law of 1987 by finding that Subsection 693(4) of the Charter of the City of Memphis was repealed by the Electric Law and that Subsection 693(6) of the Charter of the City of Memphis was not to be considered in relation to the calculation and distribution of tax equivalents under the Electric Law;

2. Whether the trial court erred by ordering MLGW, a non-party, to make payments due under both the electric and gas tax equivalency laws directly to Shelby County;

3. Whether the trial court erred in holding and ordering that "[h]enceforth, the gas PILOTs due to Shelby County by the City of Memphis shall be determined in accordance with Tennessee Code Annotated section 7-39-405" of the Gas Law in light of the fact that the only issue properly before the Court was payment of gas PILOTs for the years 2006 through 2009;

4. Whether the trial court erred in holding and ordering that "[h]enceforth, the gas PILOTs due to Shelby County by the City of Memphis shall be determined in accordance with Tennessee Code Annotated section 7-39-405" of the Gas Law without addressing the constitutionality of section 7-39-405 as amended in 2012; and

5. Whether the trial court's holding regarding the City's future duty to pay Shelby County a portion of gas PILOTs operates as an adjudication of the proper construction and constitutionality of section 7-39-405 as amended in 2012.

Shelby County has responded to each of these issues in its posture as appellee and presents the following additional issue for review:

6. Whether the trial court erred in finding that the County is not entitled to any monetary compensation related to gas PILOTs for fiscal years 2006 through 2009.

In response to the issue raised by Shelby County, the City of Memphis raises the following additional issues, as slightly restated:

7. Whether Shelby County's claims for monetary damages are barred in whole or in part by the applicable statutes of limitation;

8. Whether the City waived the right to challenge Shelby County's claims for liquidated monetary damages;

9. Whether Shelby County and the City are immune from each other's claims for monetary damages for alleged overpayments or underpayments of electric and gas tax equivalency payments in their respective declaratory judgment actions in the absence of a contract between the parties;

10. Whether the Memphis City Council's gas PILOT resolutions directing MLGW to distribute gas PILOTs only to the City violated the provisions of the Gas Law; and

11. Whether any provisions of the Gas Law, the Revenue Bond Law, or the City's Charter required the City to distribute or to pay a specific amount or portion of the PILOTs to Shelby County or any other taxing jurisdiction.

For the following reasons, we affirm the trial court's decision and remand for further proceedings.

### III. STANDARD OF REVIEW AND STATUTORY INTERPRETATION

"The construction of a statute and its application to the facts of a particular case present questions of law that we review *de novo* without a presumption of correctness." *Womack v. Corrections Corp. of America*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013); *Keen v. State*, 398 S.W.3d 594, 599 (Tenn. 2012)). Certain "well-defined precepts" apply when dealing with statutory interpretation:

> Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507

(Tenn.2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Colonial Pipeline v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008). Courts must presume that a legislative body was aware of its prior enactments and knew the state of the law at the time it passed the legislation. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011).

## IV. DISCUSSION

This case requires a close examination of the Municipal Electric System Tax Equivalent Law of 1987, Tenn. Code Ann. § 7-52-301, *et seq*., and the Municipal Gas System Tax Equivalent Law of 1987, Tenn. Code Ann. § 7-39-401, *et seq*. These Laws became effective on the same date and are similarly structured, but they do contain some material differences, so we will discuss them separately for clarity. We will also discuss the parties' claims for damages before their issues pertaining to declaratory relief.

### A. The Municipal Electric System Tax Equivalent Law of 1987

The Municipal Electric System Tax Equivalent Law of 1987 ("the Electric Law") is codified at Tennessee Code Annotated sections 7-52-301 through -310. It has been analyzed in only one appellate opinion since its passage in 1987. The Tennessee Supreme Court extensively discussed the Electric Law in *Knox County ex rel. Kessel v. Lenoir City, Tennessee*, 837 S.W.2d 382 (Tenn. 1992). Accordingly, we will discuss the Supreme Court's interpretation of the Electric Law at length. The Electric Law is certainly not a model of clarity, and it has been described as "ambiguous in that some of its parts seem to be in conflict with others." *Knox County*, 837 S.W.2d at 387 (O'Brien, J., dissenting).[6]

According to the Tennessee Supreme Court, the Electric Law was passed because "the Tennessee General Assembly had apparently decided that there should be some degree of uniformity created with regard to tax-equivalent payments." *Knox County*, 837 S.W.2d at 383. The stated purpose of the Electric Law is found in Tennessee Code Annotated section 7-52-302, which states:

---

[6]Aside from the complex subject matter, our task on appeal is further complicated by the fact that the City's position with respect to the proper interpretation of the Electric Law and the governing standard for calculating tax equivalents has changed numerous times throughout these proceedings.

(a) The purpose of this part is to provide the complete law of this state with respect to payments in lieu of taxes on the property and operations of all electric systems owned and operated by incorporated cities or towns, by counties, and by metropolitan governments, and to repeal the specific provisions of any private act, home rule charter or metropolitan government charter, or any part thereof, relating to payments in lieu of taxes, including certain provisions relating to the distribution of any such payments, but not to repeal any other provisions of such private acts or charters or parts of private acts or charters.

(b) This part is remedial in nature and this part shall be liberally construed to effectuate the purpose of this part.

In *Knox County*, the Supreme Court considered whether a private act governing the distribution of tax equivalent payments on property owned by the Lenoir City Utilities Board impermissibly conflicted with the Electric Law. *Id.* at 383-84. The appellant argued that the Electric Law was a general law intended to have mandatory, statewide application. *Id.* at 383. The Supreme Court conceded that "[s]uperficially, at least, this argument appears to have merit." *Id.* at 384. The Court recognized that the stated purpose of the Electric Law, quoted above, was "'to provide the complete law of this state with respect to payments in lieu of taxes on the property and operations of all [municipal] electric systems'" and to "'repeal the specific provisions of any private act or home rule charter or metropolitan government charter . . . relating to payments in lieu of taxes.'" *Id.* (quoting Tenn. Code Ann. § 7-52-302(a)). However, the Court explained that "a close reading of the full provision reveals that the term 'complete law' does not preclude the validity of all private acts affecting *distribution* of payments." *Id.* (emphasis added). Instead, the Court explained, the legislature's intent to repeal private acts was "qualified" by the italicized portion of the statute below:

(a) The purpose of this part is to provide the complete law of this State with respect to payments in lieu of taxes on the property and operations of all electric systems owned and operated by incorporated cities or towns, by counties, and by metropolitan governments, and *to repeal* the specific provisions of any private act or home rule charter or metropolitan government charter, or any part thereof, relating to payments in lieu of taxes including *certain provisions relating to the distribution of any such payments, but not to repeal any other provisions of such private acts or charters or parts thereof.*

*Id.* (quoting Tenn. Code Ann. § 7-52-302(a)).

The Court explained that after the sections of the Electric Law setting forth its purpose

-10-

and applicable definitions, the remaining statutory provisions basically "address two questions: how much is to be paid in lieu of taxes (calculation of payments) and to whom the payments must be distributed when more than one taxing jurisdiction is involved (allocation of payments)." *Knox County*, 837 S.W.2d at 384. The method of calculating the amount of tax equivalents is found at section 7-52-304, which provides, in relevant part:

Notwithstanding any provision to the contrary appearing in § 7-34-115 or in the provisions of any private act, home rule or metropolitan government charter, every municipality may pay or cause to be paid from its electric system revenues for each fiscal year an amount for payments in lieu of taxes, called "tax equivalents" in this part, on its electric system and electric operations, which, in the judgment of the municipality's governing body after consultation with the supervisory body, shall represent the fair share of the cost of government properly to be borne by the municipality, subject, however, to the following conditions and limitations:

(1) The total amount so paid as tax equivalents for each fiscal year shall not exceed a maximum amount equal to the sum of the following:

(A) With respect to each of the respective taxing jurisdictions in which the municipality's electric system is located, the equalized property tax rate, determined as provided in this part, for the taxing jurisdiction as of the beginning of such fiscal year, multiplied by the net plant value of the electric plant and the book value of materials and supplies within the taxing jurisdiction as of the beginning of such fiscal year, multiplied by the assessment ratio in effect as of the beginning of such fiscal year; and

(B) Four percent (4%) of the average of revenue less power costs from electric operations for the preceding three (3) fiscal years;

(2) Such tax equivalent payments shall be made only from electric system revenues remaining after payment of, or making reasonable provision for payment of [certain specified obligations and reserves];

. . . .

(3) The total amount to be paid as tax equivalents for each fiscal year shall be in lieu of all state, county, city and other local taxes or charges on the municipality's electric system and electric operations, except as provided in subdivision (6) [regarding retail sales or use taxes]. Accordingly, after initial determination of such total tax equivalent amount to be paid in the absence of any such taxes or charges, such total tax equivalent amount shall be reduced by the aggregate amount of any such taxes or charges imposed for such fiscal

-11-

year on the municipality's electric system or electric operations by or for the benefit of the respective taxing jurisdictions, including the municipality, in which the municipality's electric system is located and in which such electric operations are conducted . . . .;

(4) The total amount to be paid as tax equivalents, including that to be paid for a municipality and any other taxing jurisdiction, for each fiscal year, determined in accordance with and subject to this part, shall be set forth in a resolution adopted by the municipality's governing body after consultation with the supervisory body, and the municipality's electric system shall pay to the municipality and any other taxing jurisdictions the amounts as provided in the resolution[.]

Tenn. Code Ann. § 7-52-304.

After this calculation provision setting out how much is to be paid in lieu of taxes, the Electric Law addresses distribution of tax equivalents, or in other words, "to whom the payments must be distributed when more than one taxing jurisdiction is involved (allocation of payments)." *Knox County*, 837 S.W.2d at 384. Sections 7-52-306 through -310 "govern distribution" and "control the question of allocation of the tax equivalents." *Id.* Most of the distribution provisions in the Electric Law "reflect a legislative intent to control the terms of calculation but to allow flexibility with regard to allocation." *Id.* For example, section -306 allows competing taxing jurisdictions to "make and perform contracts for distribution among them of the tax equivalent amounts provided for in this part." Tenn. Code Ann. § 7-52-306. In such contracts, the competing taxing jurisdictions "may provide for . . . distribution on any basis that is satisfactory to the contracting parties," but the contract must be "consistent in all respects" with the calculation provisions found in section 7-52-304. *Id.* Section -306 also validates contracts and "established arrangements" for distribution that were in existence on the effective date of the 1987 Act. *Id.*

Under certain circumstances, the Electric Law also allows distribution of tax equivalents by private act or home rule or metropolitan government charter, pursuant to section 7-52-309. According to the Supreme Court in *Knox County*, section -309 repeals some allocation provisions in private acts and charter provisions, "but *only* those which 'direct that the tax equivalent amount to be distributed to each taxing district is to be an amount arrived at by applying the current ad valorem tax rate in that district to the depreciated original cost of the electric system's tangible property[.]'" *Id.* at 385 (quoting Tenn. Code Ann. § 7-52-309). The Court concluded that "it was this qualified repealer provision to which the legislature had reference[d] in § 7-52-302," the stated purpose of the Electric Law, "when it stated an intent to repeal 'certain provisions' of private acts affecting distribution, 'but not to repeal any other provisions of such private acts.'" *Id.* (quoting Tenn.

-12-

Code Ann. § 7-52-302). Because the private act at issue in *Knox County* did not utilize the specific formula proscribed in section 7-52-309, the validity of the private act was "not affected by the repealer provision in [section -309]." *Id.*

In accordance with these principles, section 7-52-307 of the Electric Law sets forth a "prescribed statutory method for allocating payments between or among taxing jurisdictions in which electric service is provided by a utility," but the statutory method of allocation "applies only to the extent that there is no pre-existing 'contract, established arrangement . . . , or distribution provisions of any private act or home rule or metropolitan government charter'" providing otherwise. *Id.* at 384 (quoting Tenn. Code Ann. § 7-52-307) (emphasis omitted). The relevant portions of section 7-52-307 provide:

> The municipality's governing body, in the resolution provided for in § 7-52-304(4), except to the extent otherwise provided in any contract, established arrangement authorized or validated under § 7-52-306, or distribution provisions of any private act, home rule or metropolitan government charter, shall direct payment of the tax equivalent amounts to the taxing jurisdictions in which its electric plant in service is located on the following basis and subject to the following terms and conditions:
>
> > (1) For each fiscal year, the municipality shall allocate twenty-two and one-half percent (22.5%) of the total tax equivalent paid for that fiscal year as provided in § 7-52-304(1), or § 7-52-304(5) where applicable, to payments in lieu of all taxes or other charges for the benefit of county taxing jurisdictions. . . ;
> >
> > (2) For each fiscal year, the municipality shall allocate to each city taxing jurisdiction, other than itself, in lieu of all taxes or other charges for the benefit of that city taxing jurisdiction, an amount equal to the equalized property tax rate of such other city taxing jurisdiction multiplied by the net plant value of the electric plant, plus the book value of materials and supplies located within the boundaries of such other city taxing jurisdiction multiplied by the assessment ratio, and make such reductions as may be required under § 7-52-304(3) and (4);
> >
> > (3) The maximum to be paid into the municipality's general fund shall be the balance of the total tax equivalent, after deducting the amounts determined under subdivisions (1) and (2)[.]

Tenn. Code Ann. § 7-52-307.

The final section of the Electric Law, section -310, states, "Except as otherwise expressly provided in this part, all acts or parts of acts, including parts of any private act, or home rule, or metropolitan government charter, in conflict with this part are, to the extent of such conflict with this part, repealed." Tenn. Code Ann. § 7-52-310. For purposes of the Court's decision in *Knox County*, the Court noted that this section "repeals those 'parts of any private act . . . in conflict herewith . . . to the extent of such conflict[.]'" *Knox County*, 837 S.W.2d at 385 (quoting Tenn. Code Ann. § 7-52-310). The Supreme Court found that the private act at issue in *Knox County* was not in conflict with any provision of the Electric Law and therefore was "unaffected" by section 7-52-310. *Id.* The private act only governed distribution of tax equivalent payments, not their calculation, and section 7-52-307 of the Electric Law provides the default method of distribution except to the extent otherwise provided in any contract, "established arrangement authorized or validated under § 7-52-306 . . . , or *distribution provisions of any private act*, home rule or metropolitan government charter." *Id*. at 384 (emphasis added).

In sum, the Supreme Court concluded in *Knox County* that "although the legislature intended to bring some uniformity to the tax-equivalent payment schemes, especially in the *calculation* of amounts to be paid, there was no intent to create a 'general law' that imposes a mandatory, statewide method of *distribution* of payments.'" *Id.* at 385 (emphasis added). The Court concluded that the Electric Law validated, and to some extent even encouraged, the use of private acts, contracts, and established arrangements for the distribution of payments to competing jurisdictions. *Id.* Accordingly, the Court determined that "regardless of its stated intent to provide the 'complete law' of municipal utility tax equivalents, the 1987 Act specifically permits the allocation of payments among taxing jurisdictions to be established by means of a private act[.]" *Id.*

Having reviewed the pertinent sections of the Electric Law, we now turn to the facts of the case before us. Again, the parties' dispute involves the electric tax equivalents that were paid for fiscal years 2006 to 2009. During those years, the Memphis City Council required MLGW to compute the maximum payment in lieu of taxes from MLGW's electric division using the formula in the Electric Law for calculating the maximum permissible in lieu of tax payment by a municipal electric utility. For fiscal years 2006 through 2009, MLGW's annual electric tax equivalent payments ranged between $33 million and $37 million per year. The Memphis City Council approved each calculation by resolution. During the proceedings below, the parties stipulated that MLGW's calculation of the tax equivalents was mathematically accurate and complied with the calculation provision set forth in the Electric Law at Tennessee Code Annotated section 7-52-304(1)-(4).

During each of the years at issue, the City paid Shelby County a portion of the electric tax equivalent payments received from MLGW in amounts ranging between $7.5 million and

$8.5 million each year.  As noted above, the Electric Law provides the following distribution formula for allocating electric tax equivalents among taxing jurisdictions, as relevant here:

> The municipality's governing body, in the resolution provided for in § 7-52-304(4), except to the extent otherwise provided in any contract, established arrangement authorized or validated under § 7-52-306,[7] or distribution provisions of any private act, home rule or metropolitan government charter, shall direct payment of the tax equivalent amounts to the taxing jurisdictions in which its electric plant in service is located on the following basis and subject to the following terms and conditions:
>> (1) For each fiscal year, *the municipality shall allocate twenty-two and one-half percent (22.5%) of the total tax equivalent paid* for that fiscal year as provided in § 7-52-304(1), or § 7-52-304(5) where applicable, to payments in lieu of all taxes or other charges *for the benefit of county taxing jurisdictions*.

Tenn. Code Ann. § 7-52-307 (emphasis added).  Here, the parties stipulated that the payments made to the County by the City for fiscal years 2006 through 2009 were computed by applying 22.5% to the maximum electric tax equivalent payment paid by MLGW each year.  Accordingly, they also stipulated that if it is proper to calculate the electric tax equivalents by multiplying 22.5% times the *total* maximum electric payment made from MLGW's electric operations each year, then the City paid the correct amount for fiscal years 2006 through 2009.

However, the City claims that it is necessary to apply a somewhat different formula for calculating Shelby County's share of the electric tax equivalents.  The City argues that section 7-52-307 of the Electric Law does not require the City to distribute an electric tax equivalent payment to the County equal to 22.5% of the *total* tax equivalent payment "without reduction for payments and charges required to be made to the City by MLGW under [Subsection] 693(4) and (6) of the Charter of the City of Memphis."  The City claims that the total tax equivalent payment is the "gross amount," which must then be reduced by certain "payments in lieu of taxes on [the] electric system that are required by [Subsection] 693(4) and (6) of the City's Charter."  In other words, according to the City, MLGW must pay certain payments in lieu of taxes on its electric system pursuant to the City Charter, "only

---

[7]The parties concede there is no contract or established arrangement governing distribution of electric PILOTs.  Before the trial court, the City raised an alternative argument regarding whether the parties were bound by a 1972 agreement with respect to PILOTs.  However, the trial court found that such agreement was no longer in effect, and that finding was not challenged on appeal.

to the City's general fund before making any distributions" to other taxing jurisdictions from the "net" amount remaining after these reductions. The City claims that it overpaid Shelby County during fiscal years 2006 through 2009 by approximately $14.4 million, as this amount represents the difference between 22.5% of the "total" tax equivalents versus 22.5% of the "adjusted net" tax equivalents after the deductions now claimed by the City.

Section 693 of the City Charter provides, in relevant part:

Sec. 693. Disposition of revenue of [electric] division.

The revenue received each year from the operation of the [electric] division, before being used for any other purpose, shall be used for the following purposes, in the order named, to-wit:
(1) For the payment of all operating expenses of the [electric] division for the year.
(2) For interest accruals and sinking fund accruals on bonds or mortgages issued for the benefit of the [electric] division.
(3) For cash payments to a working capital reserve, a renewals and replacements reserve, and a casualties reserve, for the benefit of the [electric] division. . . .
(4) *For payment to the general funds of the municipality a sum equal in amount to what would be the city taxes on the properties of the [electric] division within the city limits of the City of Memphis if said properties were privately owned.*
(5) For payment to a reasonable surplus account which may be used by the board of light, gas and water commissioners for extensions and improvements to the [electric] plant or system and/or for the purpose of outstanding bonds that may have been issued for the benefit of the [electric] division, as the board of light, gas and water commissioners may deem advisable.
(6) *For the payment to the general funds of the municipality a sum not to exceed a cumulative return of six percent (6%) per annum of the equity or investment, if any, of the municipality in the properties of the [electric] division, the said percentage to be fixed by resolution of the City Council of the City of Memphis. . . . provided that in no event shall the aforesaid payment to the municipality for any year exceed one-half of the net profits realized by the [electric] division during that year, unless the board of Light, Gas and Water Commissioners shall, by resolution, consent thereto.*
(7) Any surplus thereafter remaining over and above safe operating margins, shall be devoted solely to rate reduction. (Emphasis added.)

We will consider the effect of subsection 693(4) before considering subsection 693(6). The trial court found that subsection 693(4) "addresses the calculation of PILOTs paid by MLGW and calculates those PILOTs on a basis inconsistent with what is dictated under the electric tax equivalency law," and therefore, subsection (4) "must be considered to be repealed" by the Electric Law. The City insists that subsection (4) was not repealed by the Electric Law. Again, the relevant language of section 7-52-304 provides:

> *Notwithstanding any provision to the contrary appearing* in § 7-34-115 or *in the provisions of any private act, home rule or metropolitan government charter*, every municipality may pay or cause to be paid from its electric system revenues for each fiscal year an amount for payments in lieu of taxes, called "tax equivalents" in this part, on its electric system and electric operations, which, in the judgment of the municipality's governing body after consultation with the supervisory body, shall represent the fair share of the cost of government properly to be borne by the municipality, subject, however, to the following conditions and limitations:
> (1) The total amount so paid as tax equivalents for each fiscal year shall not exceed a maximum amount equal to the sum of the following:
> . . . .

(Emphasis added.) The City points to the statute's use of the phrase "notwithstanding any provision to the contrary" and claims that "[t]his phrase does not expressly repeal" the provisions of private acts or charters. We agree. The term "notwithstanding" commonly means "despite" or "in spite of." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 600 (2d ed.1987). We agree with the City that this statute permits a municipality to pay (or cause to be paid) tax equivalents for each fiscal year in an amount determined by the municipality's governing body after consultation with the supervisory body, notwithstanding (or despite) any provision to the contrary in a home rule charter or in Tennessee Code Annotated section 7-34-115, provided that the tax equivalent amount does not exceed the cap set forth in subsection (1) or conflict with the other conditions in the following subsections. Section -304 does not expressly *repeal* contrary provisions in home rule charters; it simply allows governing bodies of municipalities to set the amount of tax equivalents notwithstanding contrary charter provisions. However, we find that the final section of the Electric Law, section -310, *does* repeal contrary charter provisions like subsection 693(4) of the Memphis City Charter. Section -310 states, "Except as otherwise expressly provided in this part, all acts or parts of acts, including parts of any private act, or home rule, or metropolitan government charter, in conflict with this part are, to the extent of such conflict with this part, repealed." Tenn. Code Ann. § 7-52-310. So, to summarize, section -304 of the Electric Law permits the governing body of a municipality, after consultation with the supervisory body, to establish an amount for payments in lieu of taxes from its electric system each fiscal year

*despite* any provision to the contrary in a home rule charter. However, section -310 expressly repeals provisions of home rule charters in conflict with the Electric Law.

In an apparent attempt to demonstrate that there is no conflict between the calculation provision of the Electric Law (§ 7-52-304) and the City Charter (§ 693(4)), the City argues on appeal that the calculation provision of the Electric Law does not prohibit the Memphis City Council from making a determination that the fair cost of government to be borne by the electric system was provided only by the City, and in that case, MLGW would only pay tax equivalents to the City in the amounts required by subsection 693(4) of the City Charter. The City further argues that the Electric Law permits municipalities to set an amount to be paid by its electric system in tax equivalents that is greater than that allowed by the provisions of a private act or home rule charter as long as the amount so established does not exceed the maximum "cap" determined under subsection 7-52-304(1). We agree with the City's reading of the calculation provision in -304 to the extent that it would allow the governing body of the municipality to establish "for each fiscal year" the amount of PILOTs "which, in the judgment of the municipality's governing body after consultation with the supervisory body, shall represent the fair share of the cost of government properly to be borne by the municipality[.]"[8] Hypothetically, the Memphis City Council could determine that the tax equivalent amount should be set at the same amount required by subsection 693(4) of the City Charter, and the Council's decision would be permissible under the Electric Law if the amount of the PILOT did not exceed the cap in subsection (1) and otherwise met the other conditions listed in -304. However, this scenario also demonstrates the conflict we perceive between the calculation provision of the Electric Law and the City Charter provision at issue. The Electric Law contemplates that the governing body of the municipality will make such a determination each fiscal year, "as early in such fiscal year as possible," based on the judgment of the municipality's governing body after consultation with the supervisory body,[9] "in accordance with and subject to this part." Tenn. Code Ann. § 7-52-304(4). In contrast, the City Charter provision mandates a certain tax equivalent payment to the City without

---

[8]Shelby County briefly argues that subsection 7-52-304(1) provides "the method for calculating tax equivalent payments" and not "merely a cap." The plain language of section -304 authorizes the governing body of the municipality to set "an amount for payments in lieu of taxes, . . . which, in the judgment of the municipality's governing body . . . represent the fair share of the cost of government properly to be borne by the municipality, subject, however," to the conditions and limitations that follow. Tenn. Code Ann. § 7-52-304. Shelby County argues that there is "some ambiguity" in this language and that it would better serve the legislature's goal of uniformity if municipalities do not have discretion to set the amount of PILOTs. We find no ambiguity in this section and reject Shelby County's suggestion that subsection 7-52-304(1) provides a mandatory formula for calculation of electric PILOTs rather than a cap.

[9]"'Supervisory body' means any board or other agency of a municipality established to supervise the management and operation of its electric system and electric operations, or, in the absence of a board or other agency, the governing body of the municipality." Tenn. Code Ann. § 7-52-303(10).

regard to the calculation provision of the Electric Law. The City Charter binds the hands of the Memphis City Council and requires the payment of a certain tax equivalent, which is to be calculated in a manner that conflicts with the Electric Law and without regard to the judgment of the Memphis City Council. Section 693 requires MLGW revenues to be used for payment of this mandated tax equivalent amount (and other obligations) "before being used for any other purpose," and it requires any surplus remaining after payment of these sums to be devoted solely to rate reduction, with no mention of tax equivalents payable pursuant to the Electric Law.

It is not enough to say that the monetary amount of the tax equivalent required under subsection 693(4) does not exceed the cap imposed by subsection 7-52-304(1) and then conclude that the two provisions are consistent and without conflict. Section 7-52-304 imposes numerous conditions on the calculation of tax equivalents beyond the maximum cap addressed in subsection (1), and subsection 693(4) of the City Charter conflicts with those additional provisions.[10] As the Supreme Court noted in *Knox County*, the Electric Law reflects "a legislative intent to control the terms of calculation" of tax equivalents. *Knox County*, 837 S.W.2d at 384. The legislature "intended to bring some uniformity to the tax-equivalent payment schemes, especially in the calculation of amounts to be paid[.]" *Id.* at 385. Accordingly, we agree with the trial court's finding that subsection 693(4) of the Memphis City Charter calculates tax equivalents "on a basis inconsistent with what is dictated under the electric tax equivalency law," and therefore, subsection (4) "must be considered to be repealed" by the Electric Law to the extent it applies to the calculation of electric tax equivalent payments.[11]

The City alternatively argues that subsection 693(4) of the City Charter is a distribution provision rather than a calculation provision. As the Court explained in *Knox County*, the Electric Law allows flexibility with regard to allocation arrangements and validates distribution provisions of private acts or charters if they do not use the prohibited formula set forth in section -309 or otherwise conflict with the Electric Law. *Knox County*, 837 S.W.2d at 384. The City claims that the Tennessee Supreme Court's decision in *Knox County* is "dispositive" of the issue before us because, according to the City, the distribution provision of the private act at issue in *Knox County* was "virtually identical" to subsection 693(4) of the Memphis City Charter. We respectfully disagree. The private act at issue in

---

[10]For example, taxing jurisdictions may enter into contracts for the distribution of tax equivalents, but those contracts must be "consistent in all respects" with the calculation provision of 7-52-304. Tenn. Code Ann. § 7-52-306.

[11]Because section 693 of the City Charter also applies to other divisions of MLGW, we wish to clarify that the Electric Law only repeals subsection 693(4) "to the extent of" conflict with the Electric Law. The Electric Law does not impact the applicability of subsection 693(4) to the other divisions of MLGW.

*Knox County* only affected the distribution of payments to Lenoir City, not their calculation; it simply required "[a]ny and all" tax equivalent payments assessed to the utility to be distributed to the municipality of Lenoir City rather than other jurisdictions. Tenn. Priv. Acts 1970, c.205. In contrast, subsection 693(4) of the Memphis City Charter requires the calculation of a tax equivalent payment, requiring "a sum equal in amount to what would be the city taxes on the properties of the [electric] division within the city limits of the City of Memphis if said properties were privately owned" to be paid to the municipality. Thus, subsection 693(4) is a calculation provision in conflict with section -304 of the Electric Law; it is not a distribution provision like the one at issue in *Knox County*. The trial court also rejected the City's argument that subsection 693(4) is a distribution provision. The trial court reasoned,

> [f]ar from representing a specific allocation provision in reference to PILOTs already calculated in conformity with the electric tax equivalency law, the City charter involves a distribution of MLGW's revenues in the form of PILOTs that are to be calculated according to its terms. While this distinction may seem somewhat subtle, it is an important one that cannot be ignored.

We agree with the trial court's finding on this issue.

We now turn to the City's argument that subsection 693(6) of the City Charter also requires MLGW to make a payment in lieu of taxes to the City before determining the share to be distributed to Shelby County. Subsection (6) provides:

> The revenue received each year from the operation of the [electric] division, before being used for any other purpose, shall be used for the following purposes, in the order named, to-wit:
> . . . .
> (6) For the payment to the general fund of the municipality a sum not to exceed a cumulative return of six percent (6%) per annum of the equity or investment, if any, of the municipality in the properties of the [electric] division, the said percentage to be fixed by resolution of the City Council of the City of Memphis. . . . Provided that in no event shall the aforesaid payment to the municipality for any year exceed one-half of the net profits realized by the gas division during that year, unless the board of Light, Gas and Water Commissioners shall, by resolution, consent thereto.

The trial court concluded that this provision of the City Charter required a "dividend based payment" to the City and found "no reason why it should be considered in relation to the calculation and distribution of PILOTs." The trial court found that subsection (6) did not

contemplate either the calculation or distribution of payments in lieu of taxes, or even discuss or relate to PILOTs, "and as a result, it should have no impact on the Court's decision regarding how PILOTs are to be shared." Again, we agree with the trial court's conclusion. Unlike subsection 693(4), which provided for a payment to the City "equal in amount to what would be the city taxes on the properties of the [electric] division . . . if said properties were privately owned," the payment required by subsection 693(6) of the City Charter does not in any way suggest that it is a payment in lieu of taxes. Instead, the dividend-based payment is calculated based on a percentage of the City's equity or investment in the properties of the electric division. This sum is not in the nature of an ad valorem tax and is separate and distinct from tax equivalent payments calculated based on the value of the utility's property.[12] *See Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, at *18-24 (Tenn. Ct. App. July 13, 2012) (examining the distinction between PILOT payments and other types of fees). Accordingly, the City is not entitled to subtract the dividend based payment required by subsection 693(6) from the total tax equivalent payment made by MLGW prior to calculating Shelby County's share. *See id.* at *23 (holding that the Gas Law's mandate that PILOTs be in lieu of all state, city, and local taxes or charges did not bear on the utility's authority to pay franchise fees that were "not in the nature of property taxes" and that the utility was required to pay both franchise fees and PILOTs).

In summary, we agree with the trial court's conclusion that "the City paid exactly what was required" under the Electric Law, and it was not entitled to recover damages for overpayments during the years at issue. We reject the City's contention that its City Charter authorizes the deduction of certain sums from the tax equivalents before determining the share owed to Shelby County. Subsection 693(4) of the City Charter calculates tax equivalents on a basis inconsistent with what is dictated under the Electric Law and is therefore repealed by the Electric Law to the extent that the Charter provision applies to the calculation of electric tax equivalent payments. Subsection 693(6) does not impact the calculation or distribution of tax equivalents and remains unaffected by the Electric Law.

### B. The Municipal Gas System Tax Equivalent Law of 1987

The Municipal Gas System Tax Equivalent Law of 1987, Tenn. Code Ann. § 7-39-

---

[12]Although we agree with the trial court's conclusion that subsection 693(6) does not provide for a payment in lieu of taxes, we note that if we were to accept the City's argument that subsection 693(6) requires a payment in lieu of taxes, our conclusion with regard to this issue would be the same as our conclusion with respect to subsection 693(4). If subsection 693(6) requires a payment in lieu of taxes, it calculates tax equivalents on a basis inconsistent with what is dictated under the Electric Law, and therefore, subsection (6) would be deemed repealed by the Electric Law to the extent that it applies to the calculation of electric tax equivalent payments.

401, *et seq*., ("the Gas Law") became effective on the same date as the Electric Law, and the two statutory schemes are similarly structured, but they do contain some material differences. The Gas Law was not at issue in the *Knox County* case that analyzed the Electric Law at length, but this Court analyzed some provisions of the Gas Law in *Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960 (Tenn. Ct. App. July 13, 2012).

The stated purpose of the Gas Law is set forth in section 7-39-402 as follows:

> The purpose of this part is to provide the complete law of this state with respect to payments in lieu of taxes on the property and operations of all gas systems owned and operated by incorporated cities or towns, by counties, and by metropolitan governments, and to repeal the specific provisions of any private act, home rule charter or metropolitan government charter, or any part of any private act, home rule charter or metropolitan government charter, relating to payments in lieu of taxes, *except for* provisions relating to the distribution of any such payments, but not to repeal any other provisions of such private acts or charters or parts of the private acts or charters. This part is remedial in nature and this part shall be liberally construed to effectuate the purpose of this part.[13]

(Emphasis added.) The Gas Law also contains a calculation provision similar to the one provided in the Electric Law. The calculation provision of the Gas Law provides:

> Notwithstanding any provision of law to the contrary in this code or in the provisions of any private act, every municipality may pay or cause to be paid from its gas system revenues for each fiscal year an amount for payments in lieu of taxes, referred to as "tax equivalents", on its gas system and gas operations, which, in the judgment of the municipality's governing body, shall represent the fair share cost of government properly to be borne by the

---

[13] The stated purpose of the Electric Law, found in section 7-52-302, is almost identical but with one significant difference, which appears in italics below:

> (a) The purpose of this part is to provide the complete law of this state with respect to payments in lieu of taxes on the property and operations of all electric systems owned and operated by incorporated cities or towns, by counties, and by metropolitan governments, and to repeal the specific provisions of any private act, home rule charter or metropolitan government charter, or any part thereof, relating to payments in lieu of taxes, *including certain* provisions relating to the distribution of any such payments, but not to repeal any other provisions of such private acts or charters or parts of private acts or charters.

municipality, subject, however, to the following conditions and limitations:

(1) The total amount so paid as tax equivalents for each fiscal year shall not exceed a maximum amount equal to the sum of the following:

(A) With respect to each of the respective taxing jurisdictions in which the municipality's gas system is located, the equalized property tax rate, determined as provided in this section, for the taxing jurisdiction as of the beginning of such fiscal year, multiplied by the net plant value of the gas system and the book value of materials and supplies within the taxing jurisdiction as of the beginning of such fiscal year, multiplied by the assessment ratio in effect as of the beginning of such fiscal year; and

(B) Four percent (4%) of the average of revenue less cost of gas from gas operations for the preceding three (3) fiscal years;

(2) Such tax equivalent payments shall be made only from gas system revenues remaining after payment of, or making reasonable provision for payment of [certain specified obligations and reserves]:

. . . .

(3) The total amount to be paid as tax equivalents for each fiscal year shall be in lieu of all state, county, city, and other local taxes or charges on the municipality's gas system and gas operations except as provided in subdivision (6);

(4) The total amount to be paid as tax equivalents, including that to be paid for the municipality and any other taxing jurisdiction, for each fiscal year, determined in accordance with and subject to this part, shall be set forth in a resolution adopted by the municipality's governing body after consultation with the supervisory body, if different from the governing body, and the municipality's gas system shall pay to the municipality and any other specified taxing jurisdictions amounts as provided in that resolution. Such determination shall be made as early in such fiscal year as possible and shall become final at the end of such year;

Tenn. Code Ann. § 7-39-404.

Despite these similarities, however, the distribution or allocation provisions of the Gas Law are quite different than those provided in the Electric Law. Where the Electric Law provided a prescribed statutory method for distributing payments between or among taxing jurisdictions, which applied in the absence of pre-existing contracts, established arrangements, or distribution provisions of private acts or charters, *see* Tenn. Code Ann. §

7-52-307, the original version of the Gas Law contained no default method of distribution. In other words, the Gas Law did not contain a provision requiring 22.5% or any other specified portion of the total tax equivalent to be distributed to county taxing jurisdictions. Instead, at the time of the tax equivalent payments at issue, during fiscal years 2006 through 2009, the comparable provision of the Gas Law simply provided:

> The municipality's governing body, in the resolution provided for in § 7-39-404(4), shall direct payment of the amounts to be paid as tax equivalents to the taxing jurisdictions in which its gas plant in service is located *in accordance with and subject to any terms, conditions, contracts or agreements now in effect*.

Tenn. Code Ann. § 7-39-405 (1987) (emphasis added). At the time of the PILOT payments at issue, between 2006 and 2009, the Gas Law did not specify a method of distribution in the absence of terms, conditions or agreements.[14] During the proceedings below, the parties stipulated that there were no existing written terms, conditions, contracts or agreements between Shelby County and the City during the years at issue that provided for the distribution of MLGW's tax equivalency payments for gas services.

During fiscal years 2006 to 2009, MLGW paid gas tax equivalents to the City ranging between $13 million and $15.8 million. The Memphis City Council required MLGW to compute the payments in lieu of taxes from its gas division using the formula in the Gas Law for calculating the maximum permissible in lieu of tax payments by a municipal gas utility. That formula utilizes the Shelby County tax rate. Accordingly, during fiscal years 2006 to 2009, MLGW paid gas PILOTs to the City that were calculated using Shelby County's tax rate. The portions of the tax equivalents that were calculated using the Shelby County tax rate ranged from $5.6 million to $7.2 million per year. However, Shelby County did not receive any gas PILOT distributions from the City for fiscal years 2006 through 2009.[15] Shelby County seeks damages in the amount of $24.3 million for gas PILOTs that were calculated using the County's tax rate during fiscal years 2006 to 2009.

Even though the Gas Law did not contain a distribution provision similar to that in the Electric Law expressly requiring municipalities to distribute a share of gas tax equivalents

---

[14]As we will discuss in greater detail below, this section of the Gas Law was amended in 2012.

[15]However, during those years, MLGW paid gas PILOT distributions directly to every other taxing jurisdiction in Shelby County, including Arlington, Bartlett, Collierville, Germantown, Lakeland, Memphis, and Millington. During these proceedings, the City was unable to produce any written agreements between the City and the suburban municipalities concerning the distribution of gas PILOTs.

to county taxing jurisdictions, Shelby County claims that it was entitled to a share of the tax equivalents according to the Gas Law. Shelby County points out that the Gas Law's calculation provision, 7-39-404, provides in subsection (4):

> (4) The total amount to be paid as tax equivalents, including that to be paid for the municipality *and any other taxing jurisdiction*, for each fiscal year, determined in accordance with and subject to this part, shall be set forth in a resolution adopted by the municipality's governing body after consultation with the supervisory body, if different from the governing body, and the municipality's gas system shall pay to the municipality *and any other specified taxing jurisdictions* amounts as provided in that resolution.

(Emphasis added.) Shelby County points out that the Gas Law defines a "taxing jurisdiction" as "any *county*, incorporated city or town, or metropolitan government in Tennessee having the power to levy taxes, or any special taxing district in Tennessee on behalf of which ad valorem property taxes may be levied, for the support of governmental and related activities and services." Tenn. Code Ann. § 7-39-403(11) (emphasis added). Still, we find that these sections of the Gas Law do not mandate payments of gas tax equivalents to counties. Subsection 7-39-404(4) simply requires the amount of tax equivalents to be paid to the municipality "and any other taxing jurisdiction" after being "determined in accordance with and subject to this part" to be set forth in a resolution, and the tax equivalents are to be paid to the municipality "and any other specified taxing jurisdictions" as provided in that resolution. Subsection -404(4) does not mandate a payment to "any other taxing jurisdiction," whether a county or other municipality, unless it has been "determined in accordance with" the other provisions of the Gas Law.

Shelby County also claims that the Gas Law demonstrates an intent that gas PILOTs are to be paid to other taxing jurisdictions, besides the operating municipality, because the calculation provision of section 7-39-404 refers to other taxing jurisdictions and uses the tax rate of other taxing jurisdictions in its formula. Specifically, the calculation provision provides a maximum "cap" on the total amount of tax equivalents to be paid by a gas utility, which shall be computed as follows:

> (1) The total amount so paid as tax equivalents for each fiscal year shall not exceed a maximum amount equal to the sum of the following:
> > (A) With respect to *each of the respective taxing jurisdictions* in which the municipality's gas system is located, the equalized property tax rate, determined as provided in this section, for the taxing jurisdiction as of the beginning of such fiscal year, multiplied by the net plant value of the gas system

and the book value of materials and supplies within the taxing
jurisdiction as of the beginning of such fiscal year, multiplied by
the assessment ratio in effect as of the beginning of such fiscal
year; and

        (B) Four percent (4%) of the average of revenue less cost
of gas from gas operations for the preceding three (3) fiscal
years;

Tenn. Code Ann. § 7-39-404(1) (emphasis added). Again, however, we find nothing in this language to indicate that counties must receive a portion of the gas utility's tax equivalent payment, even if the municipality's governing body decides to set the amount of the tax equivalent payment at the maximum cap established by subsection 7-39-404(1), which was set by considering the tax rate of other taxing jurisdictions.

The Tennessee Supreme Court rejected a similar argument in *Rutherford County v. City of Murfreesboro*, 304 S.W.2d 635 (Tenn. 1957). Although that case involved tax equivalent payments made pursuant to a contract with the Tennessee Valley Authority, rather than the Electric or Gas Law, we find the Court's analysis instructive. The TVA contract authorized the city to take an amount in lieu of taxes from the electric department revenues for the general funds of the municipality, and the amount was to be determined by a formula that applied the municipal property tax rate along with the county and state tax rates to the value of the electric system. *Id.* at 637. However, the contract did not expressly state that the county was to receive any benefits thereunder or that the city was required to pay over to the county the county tax equivalent taken from the electric department revenues. *Id.* Accordingly, the Supreme Court explained that the county would not be entitled to a share of the tax equivalent payments "unless such benefit is conferred by fair implication" by the fact that the formula applied the county tax rate to the value of the electric system when determining the amount in lieu of taxes the city could transfer to its general fund. *Id.* at 638 (citation omitted). However, the Supreme Court rejected the county's argument that it was entitled to a share of the tax equivalent payment, stating, "This Court construes this formula as merely stating a criterion by which the amount in lieu of taxes is to be measured, rather than as creating any rights in any sub-division of government whose tax rate happens to be used as the yard stick." *Id.* In the case before us, we likewise conclude that Shelby County is not entitled to a share of the gas PILOTs paid by MLGW between 2006 and 2009 simply because Shelby County's tax rate was included in the formula by which MLGW calculated the maximum permissible tax equivalent, which MLGW ultimately paid to the City.

Next, Shelby County asks this Court to consider a 2012 amendment to section 7-39-405 of the Gas Law. Effective May 10, 2012, the distribution provision of the Gas Law was amended by designating the existing language as subsection (a) and adding a new subsection

(b):

> (a) The municipality's governing body, in the resolution provided for in § 7-39-404(4), shall direct payment of the amounts to be paid as tax equivalents to the taxing jurisdictions in which its gas plant in service is located in accordance with and subject to any terms, conditions, contracts or agreements now in effect.
>
> (b) Notwithstanding the provisions of any private act or home rule charter, or any part thereof, relating to the distribution of payments in lieu of taxes, unless a written agreement was executed prior to April 2012, or becomes effective on the first day of any fiscal year thereafter, by another taxing jurisdiction and a municipality, located in any county having a charter form of government, that owns and operates a gas system, and such written agreement provides for a different payment, then *each taxing jurisdiction shall receive a payment that is equal to that portion of the total tax equivalent payment that is calculated using each such taxing jurisdiction's tax rate* pursuant to § 7-39-404(1)(A).

Tenn. Code Ann. § 7-39-405 (emphasis added). Even though this amendment did not apply to the distribution of gas PILOTs during fiscal years 2006 through 2009, Shelby County claims that this amendment "reflects the Tennessee legislature's intent that operating municipalities who collect gas PILOTs in accordance with the Gas Law are then obligated to distribute the other taxing jurisdictions their share of the payments received[.]" Shelby County also points out that the caption to the original Gas Law bill, passed as Ch. 220 Public Acts of 1987, stated,

> AN ACT To provide for payments in lieu of taxes on the property and operations of all gas systems owned and operated by incorporated cities or towns, by counties, or by metropolitan governments; to authorize such incorporated cities or towns, counties, and metropolitan governments to contract as to the distribution of such payments among certain local taxing jurisdictions and validate any existing contracts for, or existing established arrangements for, distribution thereof; *to provide for distribution in the absence of contract or established arrangement*; to provide for the repeal of all laws in conflict herewith including the parts of any private act or home rule or metropolitan government charter pertaining to payments in lieu of taxes except for provisions relating to the distribution of any such payments; to provide that this act is remedial in nature and shall be liberally construed; and to amend Tennessee Code Annotated, Title 7, Chapter 39.

(Emphasis added.)[16] Shelby County asks this Court to consider the 2012 amendment and the caption to the 1987 bill in order to find that the Gas Law was intended to require distribution of gas PILOTs to other taxing jurisdictions during 2006 through 2009.

Although we agree that gas PILOTs must be shared going forward, pursuant to the 2012 amendment effective May 10, 2012, we are not convinced that the 2012 amendment or the caption of the 1987 bill requires a different interpretation of the previous version of the statute.

> When necessary to resolve a statutory ambiguity or conflict, we may consider matters other than the statutory language – such as the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, earlier versions of the statute, the caption of the act, and the legislative history of the statute – to discern the legislature's intent.

*Womack v. Corrections Corp. of America*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing *Pickard v. Tennessee Water Quality Control Bd.*, 424 S.W.3d 511, 518 (Tenn. 2013)). However, non-codified external sources such as these "'cannot provide a basis for departing from clear codified statutory provisions.'" *Id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 528 (Tenn. 2010))). The actual text of the Gas Law during the relevant time period simply required distribution of gas PILOTs to be "in accordance with and subject to any terms, conditions, contracts or agreements now in effect." Tenn. Code Ann. § 7-39-405 (1987). In the absence of any terms, conditions, contracts or agreements, there was no prescribed mechanism for distribution of gas PILOTs. Considering the detailed provisions in the Electric Law regarding distribution of electric PILOTs, we cannot overlook the absence of a default distribution method in the Gas Law.

Shelby County also claims that this Court's decision in *Town of Middleton v. City of Bolivar* "affirmed the obligation of operating municipalities to direct the distribution of gas PILOTs to the other taxing jurisdictions in which the gas services are located." In *Town of Middleton*, however, the operating municipality did not argue that it was not required to pay gas PILOTs to other taxing jurisdictions pursuant to the Gas Law. In fact, the operating

---

[16] The caption of the Electric Law and the caption of the Gas Law are almost identical, and both captions contain the italicized portion regarding "provid[ing] for distribution in the absence of contract or established arrangement." *See* Tenn. Pub. Acts 1987, ch.84. However, only the Electric Law actually contained a prescribed statutory method of distribution that would apply in the absence of a contract, established arrangement, etc.

municipality in that case had adopted an ordinance resolving to pay PILOTs to the other taxing jurisdictions. *Town of Middleton v. City of Bolivar*, W2011-01592-COA-R3-CV, 2012 WL 2865960, at *23 (Tenn. Ct. App. July 13, 2012). The issue presented by the operating municipality on appeal was whether it was required to pay PILOTs to the other taxing jurisdictions *in addition to* franchise fees, or whether the Gas Law prohibited the payment of both sums. *Id.* at *22. The operating municipality claimed that the Gas Law, "as amended," prescribed "the only type, and the maximum amount" of any payments the utility could make to another taxing jurisdiction for any reason. *Id.* at *5. When discussing the Gas Law, we said that it "does not limit the payment of PILOT by a utility only to that utility's operating municipality," but rather, the Gas Law "contemplates that, in addition to PILOT made to its operating municipality, a gas utility *may* also make PILOT to taxing jurisdictions." *Id.* at *23 (emphasis added). We also said that under the 2012 amendment to the Gas Law, meaning subsection 7-39-405(b), "the taxing jurisdictions are owed PILOT." *Id.* at *24. However, we did not hold or imply that an operating municipality was required to pay gas PILOTs to other taxing jurisdictions under the former version of section 7-39-405.

Shelby County's next argument on appeal is that it is entitled to recover damages for the unpaid gas PILOTs from 2006 to 2009 pursuant to "[t]he Revenue Bond Law." Tennessee Code Annotated section 7-34-103 declares the policy underlying the Revenue Bond Law as follows:

> (a) It is declared to be the policy of this state that any municipality acquiring, purchasing, constructing, reconstructing, improving, bettering or extending any public works pursuant to this chapter shall manage such public works in the most efficient manner consistent with sound economy and public advantage, to the end that the services of the public works shall be furnished to consumers at the lowest possible cost.
> (b) No municipality shall operate public works for gain or profit or primarily as a source of revenue to the municipality, but shall operate public works for the use and benefit of the consumers served by the public works and for the promotion of the welfare and for the improvement of the health and safety of the inhabitants of the municipality.
> (c) No use of revenues authorized by this chapter shall be construed as being contrary to the policy declared in this section.

Section 7-34-115 of the Revenue Bond Law authorizes a municipality to devote revenues from a public works to or for nine categories of expenses, including "payments to the municipality in lieu of ad valorem tax on the property of the public works within the corporate limits of the municipality not to exceed the amount of taxes payable on privately owned property of similar nature." Tenn. Code Ann. § 7-34-115(a)(9). The statute provides

that any surplus remaining after establishment of proper reserves "shall be devoted solely to the reduction of rates." Tenn. Code Ann. § 7-34-115(b). "If a municipality violates this section, it must repay any funds illegally transferred," and "any city official in violation of this section is subject to ouster." Tenn. Code Ann. § 7-34-115(f). However, the statute goes on to provide that "[t]o the extent of any conflict between this section and § 7-39-404 [the calculation provision of the Gas Law], or chapter 52, part 3 of this title [the Electric Law], [the] provisions of § 7-39-404, or chapter 52, part 3 of this title shall control." Tenn. Code Ann. § 7-34-115(h). Another section of the Revenue Bond Law states that "the limitations imposed by this chapter shall not affect, the powers conferred by any other general, special or local law[.]" Tenn. Code Ann. § 7-34-118.

On appeal, Shelby County argues that it is consistent with the policy behind the Revenue Bond Law and the policy behind the Gas Law to conclude "that the City cannot collect the gas PILOTs due to the other taxing jurisdictions, like the County, and keep them in its general funds for its own use and benefit." Shelby County contends that such a practice is not an authorized use of revenues pursuant to the Revenue Bond Law and permits the City to operate MLGW for gain or profit. However, as previously discussed, we find no violation of the Gas Law in the City's practice of calculating gas PILOTs at the statutorily imposed maximum cap and retaining those gas PILOTs rather than distributing a portion to Shelby County. The terms of the Gas Law control to the extent of any alleged conflict with the Revenue Bond Law. Tenn. Code Ann. § 7-34-115(h). Also, the calculation provision of the Gas Law expressly provides that governing bodies of municipalities may establish the amount of tax equivalents in accordance with that section "[n]otwithstanding any provision of law to the contrary in this code[.]" Tenn. Code Ann. § 7-39-404. Shelby County's argument on appeal also fails for another reason. The remedy provided by the Revenue Bond Law is that a municipality violating section 7-34-115 "must repay any funds illegally transferred" back to the utility, and any city official in violation of the statute is subject to ouster. Tenn. Code Ann. § 7-34-115(f). We have previously held that the Revenue Bond Law "contains specific remedies for its enforcement" and that the legislature envisioned a scheme whereby the right to recover revenues "is solely granted to the utility." *Morrison v. City of Bolivar*, No. W2011-01874-COA-R9-CV, 2012 WL 2151480, at *6, *9 (Tenn. Ct. App. June 14, 2012). Accordingly, we have held that "the Revenue Bond Law does not expressly create an individual private right of action" for the recovery of funds. *Id.* at *10. For these reasons, we reject Shelby County's contention that "[t]he Revenue Bond Law provides that Shelby County is entitled to monetary compensation related to gas PILOTs for fiscal years 2006-2009." (Capitalization omitted.)[17]

---

[17]Shelby County also argues that the trial court erred by failing to address in its final order the cases of *Eastman v. City of Nashville*, 81 Tenn. 717 (1884) and *State v. City of Columbia*, 52 S.W. 511 (Tenn. Ct.

(continued...)

Finally, Shelby County argues on appeal that allowing the City of Memphis to utilize the Shelby County tax rate when calculating the tax equivalent owed by MLGW but allowing the City to retain the entire tax equivalent is "contrary to fundamental principles of equity, justice and a good conscience." Despite the perceived unfairness of the result, however, we cannot reach a strained interpretation of the statute under the guise of equity or fairness. The Tennessee Supreme Court faced a similar situation in *Knox County* when the private act at issue required the entire amount of the tax equivalent payments assessed to the utility to be paid to the municipality of Lenoir City, even though some of the property giving rise to the payments was located in Knox County. *Knox County*, 837 S.W.2d at 383. After finding that such a distribution provision was permissible under the Electric Law, the Court added, "We offer no opinion as to the fairness of the current, obviously one-sided arrangement contained in [the private act at issue]. We conclude only that if Knox County wishes to alter that arrangement, it will have to address its case to the legislature, rather than the courts." *Id.* at 385. The same holds true here, and apparently, Shelby County already sought and obtained legislative action regarding this issue with the 2012 amendment to the Gas Law.

The trial court explained its interpretation of the Gas Law as it related to Shelby County's claim for monetary damages as follows:

The statute only requires distributions to be made "in accordance with and subject to any terms, conditions, contracts or agreements [in effect]," Tenn. Code Ann. § 7-39-405 (2011), and in this case, the County's counterclaim does not purport to be based on a contract of any kind. Again, while the result may seem inequitable, equity follows the law, and the law on this point is clear. No gas PILOTs were owed to the County during fiscal years 2006 through 2009. As such, the County is not entitled to any monetary compensation on its counterclaim. (Footnotes omitted.)

We agree with the trial court's conclusions and affirm the trial court's holding that Shelby County was not entitled to damages for alleged underpayment of gas PILOTs for fiscal years 2006 through 2009.

---

[17](...continued)
Ch. App. 1899). According to Shelby County, these cases demonstrate that the City cannot keep payments related to another taxing jurisdiction's authority. However, we find that the aforementioned cases simply do not control the outcome of this case. *Eastman* was a suit by the clerk of the county court of Davidson County seeking to compel Nashville officials to pay revenue allegedly due pursuant to a certain revenue act of 1883 that imposed a privilege tax on each case tried in the city court. *City of Columbia* considered whether the State was due a state litigation tax on cases tried in city court under the revenue laws of the State of Tennessee then in force. Neither case governs the present dispute.

## C. Declaratory and Injunctive Relief

In addition to seeking damages, the City's complaint also sought declaratory and injunctive relief with regard to certain issues. The City asked the trial court to declare that the City was entitled to exclude certain sums from the statutory distribution formula for electric and gas tax equivalents before distribution to the County. The counterclaim filed by Shelby County sought a declaration that the tax equivalent payments were subject to the provisions of the Electric and Gas Laws, and Shelby County asked the trial court to enter a permanent injunction directing the City of Memphis to continue paying Shelby County 22.5% of the *total* tax equivalent payment for MLGW's electric services, as required by Tenn. Code Ann. § 7-52-307, for so long as the City of Memphis collects such payments from MLGW in accordance with the Electric Law. Shelby County also asked the trial court to enter an injunction directing the City of Memphis to pay Shelby County all of the gas tax equivalent payments calculated using Shelby County's tax rate for so long as the City collects such payments from MLGW in accordance with the Gas Law. In addition, Shelby County asked the court to enter an order directing MLGW "to make payments directly to Shelby County for its portion of the tax equivalent payments" rather than sending the payments to the City for distribution. The trial court's final order contains numerous rulings addressing these requests, and on appeal, the parties challenge several of those rulings.

### 1. Declaration as to Electric PILOTs

The first declaration at issue on appeal is the trial court's holding that "[h]enceforth, when determining the electric PILOTs due to Shelby County under Tennessee Code Annotated § 7-52-307, the 0.225 multiplier shall be applied to the total tax equivalent payment calculated under Tennessee Code Annotated § 7-52-304 and accordingly Sec. 693(4) of the City of Memphis Charter is repealed." The City argues that the trial court erred in concluding that the 22.5% multiplier applies to the *total* tax equivalent payment calculated under section 7-52-304 without reducing the tax equivalent by the sums addressed in the City Charter. We have already rejected the City's assertion that it is entitled to deduct these sums from the distribution formula prior to calculating Shelby County's share of the tax equivalent payments. For the reasons set forth above, we agree with the trial court's ruling that the 0.225 multiplier shall be applied to the *total* tax equivalent payment calculated under Tennessee Code Annotated § 7-52-304 when determining the electric PILOTs due to Shelby County under Tennessee Code Annotated § 7-52-307. Accordingly, subsection 693(4) of the City Charter is repealed to the extent that it applies to the calculation of electric PILOTs.[18]

_____

[18]The trial court's order stated that subsection 693(4) of the City Charter "has been repealed by the Tennessee Electric Tax Equivalency Law." However, we wish to clarify that subsection 693(4) is only

(continued...)

## 2. Declaration as to Gas PILOTs

With regard to the payment of gas PILOTs, the trial court ruled that "[h]enceforth, the gas PILOTs due to Shelby County by the City of Memphis shall be determined in accordance with Tennessee Code Annotated § 7-39-405," which contains the 2012 amendment providing that "each taxing jurisdiction shall receive a payment that is equal to that portion of the total tax equivalent payment that is calculated using each such taxing jurisdiction's tax rate pursuant to § 7-39-404(1)(A)." The City raises several issues on appeal regarding the propriety of this ruling.

First, the City argues that "the trial court exceeded its authority under Tennessee's Declaratory Judgment Act" by making this declaration, "in light of the fact that the only issue properly before the Court was payment of gas PILOTs for the years 2006-2009." The City argues that the 2012 amendment to the Gas Law was prospective only, and therefore, it "had no applicability to the issues in this case, except to show that the 1987 Gas Law before the amendment did not require distribution based on the County's tax rate[.]" We recognize that the parties' claims for *monetary damages* were limited to fiscal years 2006 to 2009. However, both parties treated the requests for declaratory relief as pertaining to their rights and obligations in future years. In a memorandum filed by the City in support of its motion for summary judgment, the City advocated the entry of a declaratory judgment, stating that it would "bind the parties in their future interactions with regard to payments in lieu of taxes and tax equivalent payments from MLGW; this is an adequate remedy at law." Thereafter, the City suggested that the case should "be streamlined to a declaratory judgment action involving the proper interpretation of the Electric and Gas Tax Equivalency Acts so that the City and County can have certainty in the apportionment of future PILOTs between themselves." In its pretrial brief, the City explained that, aside from the issues involving damages, "this lawsuit would only involve the proper interpretation of the Electric and Gas Equivalency Laws and their application to the distribution of <u>future</u> Electric and Gas Equivalency payments." The City also acknowledged in its pretrial brief that "[t]he Court may make a proper declaration of the future rights and liabilities of the parties under the City's Charter, and applicable Tennessee statutes and decisions[.]" Then, at the trial hearing in January 2014, counsel for the City stated, "I think where we are and where the City is, we want a declaration of where we started out of what to do on a going forward basis on the electric and gas. The past is the past." Not surprisingly, then, the trial court found in its

---

[18](...continued)
repealed to the extent that it conflicts with the Electric Law, and the charter provision is unaffected to the extent that it applies to other divisions of MLGW. *See* Tenn. Code Ann. § 7-52-310 (repealing charter provisions contrary to the Electric Law "to the extent of such conflict with this part").

written order that one of the issues it was required to decide was "[t]he rights and obligations of the parties going forward." The trial court assessed the parties' rights and obligations "moving forward" and entered several rulings as to how the tax equivalents should "[h]enceforth" be calculated and distributed. The trial court concluded that consideration of the 2012 amendment to the Gas Law was "only relevant to assessing the parties' rights and obligations moving forward." We find no error in the trial court's decision to consider the 2012 amendment and its impact on the parties' future obligations. As demonstrated by the aforementioned quotes from the City during the trial court proceedings, the City was well aware of the fact that the trial court would be addressing the rights and obligations of the parties "going forward," and that determination would necessarily involve application of the 2012 amendment to the Gas Law, considering that the trial was held in January 2014. We reject the City's argument that the trial court exceeded its authority by considering the 2012 amendment to the Gas Law because "the only issue properly before the Court was payment of gas PILOTs for the years 2006-2009."[19]

The City's next issue is whether the trial court erred in ordering that future gas PILOTs be determined in accordance with the 2012 amendment to the Gas Law without addressing the constitutionality of the 2012 amendment. Shelby County discussed the 2012 amendment to the Gas Law in its motion for summary judgment filed October 4, 2013. On appeal, the City concedes that "[t]he only reference to Public Chapter 984 [the 2012 amendment] made by the City in any document filed in the case was in its Trial Memorandum," filed January 21, 2014, the day before trial. When discussing the issue of whether the Gas Law required the City to distribute a share of gas tax equivalents to the County between 2006 and 2009, the City briefly mentioned the 2012 amendment and its interpretation by the Tennessee Attorney General, arguing in its pretrial brief:

> In his official opinion No. 12-72, the Tennessee Attorney General pointed out the dichotomy between the provisions of the Gas Law prior to the adoption of 2012 Public Chapter 984 and the Gas Law as amended by such law, as follows:

---

[19]The City also alleges that Shelby County waived its right to seek any relief based on the 2012 amendment because the 2012 amendment to the Gas Law was not pled by Shelby County in a separate count or paragraph of its original or amended countercomplaint in accordance with Tennessee Rule of Civil Procedure 8.05. However, we find no violation of the Rule. Rule 8.05 provides that "[e]very pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged." Here, Shelby County did not allege a *violation* of the 2012 amendment to the Gas Law; it sought an interpretation and declaration of the Gas Law as it related to the parties' future rights and obligations. The City was adequately apprised of the County's reliance on the Gas Law and its request for declaratory relief pertaining to future obligations.

> More importantly, however, under the statute most
> municipalities "may" make "in lieu of" tax payments to
> impacted taxing jurisdictions. Where Chapter 984 applies,
> unless the municipalities have a different agreement, a taxing
> jurisdiction *must* receive an "in lieu of" property tax payment
> equal to the taxing jurisdiction's property tax rate on the value
> of the city's gas system located in that jurisdiction. (Emphasis
> in original.)

> Thus, for fiscal years 2006 through 2009 the Gas Equivalency Law by its own
> terms does not <u>require</u> the City to distribute any specific amount of MLGW
> Gas Tax Equivalency Payments to the County . . . .

The City noted in a footnote that "[t]he Attorney General also opined that '. . . Chapter 984 would likely be found constitutionally suspect as an unreasonable classification contrary to the general law under Article XI, Section 8, of the Tennessee Constitution.'" However, the City did not make any actual argument regarding the constitutionality of the 2012 amendment. In fact, the City's pretrial brief listed 22 separate "disputed issues of law" for resolution by the trial court, but not one of them involved the constitutionality of the 2012 amendment to the Gas Law. During oral argument at the trial hearing, counsel for the City briefly noted that "as to the gas[,] to the extent the 2012 statute is constitutional, which there's some debate about that, it applies and it determines how you go forward. If we use their tax rate, they get that determination." However, aside from these two fleeting references to the constitutionality of the amendment, the 2000 page record of the trial court proceedings does not contain any further mention of the issue. The City failed to notify the Tennessee Attorney General of any constitutional challenge in accordance with Tennessee Code Annotated section 29-14-107(b) and Tennessee Rule of Civil Procedure 24.04, which require that the attorney general be notified when a party alleges that a statute is unconstitutional. It is not surprising to this Court, then, that the trial court did not analyze whether the 2012 amendment to the Gas Law is in fact unconstitutional.[20]

It has long been the general rule that questions not raised in the trial court will not be entertained on appeal, and this rule also applies to an attempt to make a constitutional attack on the validity of a statute for the first time on appeal unless the statute involved is so

---

[20]The trial court's final order did state that "[a]ny other claims not addressed in any of the Court's prior orders, whether raised in connection with the City of Memphis' Complaint or Shelby County's Counterclaim, are hereby denied as if specifically denied and dismissed with prejudice." However, we reject the City's contention that this statement demonstrates an "implicit conclusion" by the trial court that the 2012 amendment is not unconstitutional.

obviously unconstitutional on its face as to obviate the necessity for any discussion. *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). The Tennessee Supreme Court has said that "'[a] conclusory contention that a statute is unconstitutional, raised for the first time in closing argument . . . does not present an attractive issue for appellate review.'" *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009) (quoting *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001)). "[T]here is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d at 32. Here, the City only mentioned the constitutionality of the statute in a footnote of a pre-trial brief filed the day before trial. As in *M.L.P.*, the City's constitutional challenge was "late-raised [and] minimally addressed." *In re M.L.P.,* 281 S.W.3d at 394. "To now rely upon the importance of this issue as grounds for appellate review is near hypocrisy given the short shrift it received at trial where it could have, and should have, been fully adjudicated." *In re Adoption of E.N.R.*, 42 S.W.3d at 32. Accordingly, we find that the constitutionality of the 2012 amendment to the Gas Law was neither presented nor decided in the trial court, and the City has waived its right to argue this issue for the first time on appeal. *In re M.L.P.*, 281 S.W.3d at 394.

For these reasons, we affirm the trial court's ruling that "[h]enceforth, the gas PILOTs due to Shelby County by the City of Memphis shall be determined in accordance with Tennessee Code Annotated § 7-39-405" of the Gas Law.[21]

### 3. Manner of Payment

The trial court also ruled that "[h]enceforth, payments due to Shelby County under both the electric and gas tax equivalency laws shall be paid directly to Shelby County by MLG&W in accordance with the state statutes." The City argues on appeal that the trial court erred by ordering MLGW, "a non-party," to make payments directly to Shelby County. The City correctly notes that the trial court, earlier in the proceedings, dismissed Shelby County's "cross-complaint" against MLGW and denied Shelby County's separate motion to add MLGW as a party. As a result, the City argues, MLGW was not a party to this action when the case was tried in January 2014, and it was error to order MLGW to perform any acts. The City also argues that the Electric Law and the Gas Law require the governing body of the operating municipality to direct the payment of tax equivalents by resolution, and therefore, the City argues, "it was error to order MLGW to make tax equivalent payments directly to Shelby County without regard to any direction from the City's governing body."

---

[21]We note that the City did not raise an issue on appeal regarding whether its City Charter authorized it to deduct sums from the *gas tax equivalents* prior to distributing a share to Shelby County, as it did with regard to the *electric* tax equivalents.

From our reading of the trial court's order, the court did not order MLGW to make payments to Shelby County without regard to direction from the Memphis City Council. To the contrary, the trial court's order stated, in relevant part:

> In assessing the obligations and rights of the parties moving forward, final consideration must be given as to the manner in which gas and electric PILOTS are to be shared. The County has asserted that the law requires MLGW's gas and electric PILOTS to be made directly to the County, and the Court agrees. Under the tax equivalency laws, the City is required to determine by resolution the amount of tax equivalent payments due to each taxing jurisdiction, whereas MLGW is the entity actually directed to make such payments to the taxing jurisdictions. See Tenn. Code Ann. §§ 7-39-404(4) and 7-39-405 (2013); Tenn. Code Ann. §§ 7-52-304(4) and 7- 52-307 (2013). The plain text of both statutes does not direct that any other practice is to occur. The Court, therefore, finds, as follows:
> . . . .
> (6) Henceforth, payments due to Shelby County under both the electric and gas tax equivalency laws shall be paid directly to Shelby County by MLGW in accordance with the state statutes.

The trial court's order clearly contemplates that the City will determine by resolution the amount of tax equivalent payments due to each taxing jurisdiction, and MLGW will make such payments to the taxing jurisdictions. This is the practice mandated by the Electric Law and the Gas Law. *See* Tenn. Code Ann. § 7-52-304(4) ("The total amount to be paid as tax equivalents, including that to be paid for a municipality and any other taxing jurisdiction, for each fiscal year, determined in accordance with and subject to this part, shall be set forth in a resolution adopted by the municipality's governing body after consultation with the supervisory body, and the municipality's electric system shall pay to the municipality and any other taxing jurisdictions the amounts as provided in the resolution."); Tenn. Code Ann. § 7-39-404(4) (containing a nearly identical provision for gas tax equivalents).[22]

---

[22]The City concedes in its brief that under the Electric Law and the Gas Law, "it is the responsibility of the municipality's governing body to direct its electric or gas systems by resolution to make payment of the tax equivalent amounts, as determined by the governing body, to the taxing jurisdictions entitled thereto." The City goes on to argue that "[a]bsent a direction from the City Council, MLGW could not make any payments other than to the City's General Fund without violating the City's Charter." However, MLGW was not ordered to make payments "[a]bsent a direction from the City Council." The trial court's order required the payments to be made "in accordance with the state statutes," with the City determining "by resolution the amount of tax equivalent payments due to each taxing jurisdiction," and MLGW being "the entity actually directed to make such payments to the taxing jurisdictions." The City admits that it would be proper

(continued...)

Furthermore, we find that the City cannot complain about the trial court's ruling with regard to this issue due to the position the City took during the proceedings below. When Shelby County asserted claims against MLGW in its cross-complaint, the City strongly opposed the addition of MLGW as a party. The City filed an answer to the counter-claim and cross-complaint "for itself and all of the constituent divisions and governmental units under the City's control." The City also filed a motion to strike the third party complaint, asserting that it was "improper and unnecessary to involve a division of the City as a separate party to this action when the City itself is a party." The City asserted that "[t]he City is properly before the Court and, if necessary, may be ordered to make future payments directly to any taxing jurisdiction entitled to an equivalency payment or may be ordered to direct MLGW to do so by appropriate Council resolution." As we read the trial court's order, the court did exactly what the City suggested. It found that "the law requires MLGW's gas and electric PILOTS to be made directly to the County" and ruled that "the City is required to determine by resolution the amount of tax equivalent payments due to each taxing jurisdiction, whereas MLGW is the entity actually directed to make such payments to the taxing jurisdictions." Accordingly, we affirm the trial court's ruling that, "[h]enceforth, payments due to Shelby County under both the electric and gas tax equivalency laws shall be paid directly to Shelby County by MLGW in accordance with the state statutes."

Finally, Shelby County argues that Tennessee's Declaratory Judgment Act "deals only with present rights that have accrued under presently existing facts" and "gives the Court no power to determine future rights or possible controversies in anticipation of events that may not occur." *See West v. Carr*, 370 S.W.2d 469, 475 (Tenn. 1963). However, we find that the instant case presented a justiciable controversy that was appropriate for resolution by declaratory judgment. Tennessee's Declaratory Judgment Act gives courts "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tenn. Code Ann. § 29-14-102(a). A party "whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." Tenn. Code Ann. § 29-14-103. Courts may not render abstract or advisory opinions based on hypothetical facts. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn. 2008). A party seeking a declaratory judgment need not show a present injury, but the party nonetheless has the burden of demonstrating that an actual "case" or "controversy" or "bona fide disagreement" exists. *Id.* As one commentator put it, "the declaratory judgment action recognizes that '[c]ourts should operate as preventive clinics as well as hospitals for the injured.'" *Id.* at 836-37 (quoting Henry R. Gibson,

_____

[22](...continued)
to order the City to direct MLGW to make future payments directly to other taxing jurisdictions "by appropriate Council resolution."

*Gibson's Suits in Chancery* § 545 (6th ed.1982). In order for the equitable remedy of declaratory judgment to lie, "there must be a showing of a 'substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment.'" *Hatcher v. Chairman*, 341 S.W.3d 258, 261 (Tenn. Ct. App. 2009) (quoting *Evers v. Dwyer*, 358 U.S. 202, 204 (1958)). In the case at bar, even though the parties' claims for damages for past years were denied, we find that this case involved parties with real and adverse interests and a "bona fide disagreement" about the interpretation of the Electric Law and the Gas Law, such that a declaratory judgment was appropriate. *See Colonial Pipeline*, 263 S.W.3d at 838.

## V. CONCLUSION

For the aforementioned reasons, we affirm the trial court's decision that the City of Memphis is not entitled to recover monetary damages for alleged overpayment of electric tax equivalents from fiscal years 2006 to 2009. We affirm the trial court's decision that Shelby County is not entitled to recover monetary damages for alleged underpayment of gas tax equivalents from fiscal years 2006 to 2009. We also affirm the trial court's declaratory and injunctive relief regarding the manner and method of calculating and distributing tax equivalents going forward. All other issues are deemed pretermitted. This matter is remanded for further proceedings as may be necessary and consistent with this opinion. Costs of this appeal are taxed one-half to the appellee, Shelby County, and one-half to the appellant, the City of Memphis, and its surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE